FEDERAL UNION SURETY COMPANY *v.* FLEMISTER.

Opinion delivered May 16, 1910.

1. INSURANCE—FOREIGN COMPANIES—RIGHT TO DO BUSINESS.—The Legislature may dictate the terms upon which foreign insurance companies may do business in this State. (Page 394.)

2. SAME—AUTHORITY OF FOREIGN COMPANY.—The liability of a foreign fire insurance company upon a policy issued upon property in this State is governed, not by the charter powers and by-laws of such company nor by the laws of the State under which it was organized to do business, but by the terms of the policy and the laws of this State. (Page 394.)

3. SAME—FOREIGN MUTUAL COMPANY—RIGHTS OF POLICY HOLDERS.—Under a policy of a foreign mutual insurance company insuring property in this State whereby it was stipulated that the insured incurred "no other or greater liability for premium or otherwise than that expressly provided in this policy," and providing for the cancellation of the policy by the insured and the payment to him of the unearned premium, *held,* that the policy holders are entitled to cancel their policies and demand repayment of the unearned portion of the premiums, without liability for the losses of other policy holders. (Page 395.)

4. FOREIGN CORPORATION—INSOLVENCY—AUTHORITY OF STATE COURTS.— The courts of this State have no authority to dissolve a foreign corporation, but may appoint a receiver to collect and distribute its assets in this State to its creditors. (Page 396.)

5. INSURANCE—INSOLVENCY—RIGHTS OF POLICY HOLDER.—Where there was no adjudication of the insolvency of a foreign mutual insurance company, and no decree dissolving the corporation, but there was an order of a chancery court appointing a receiver to collect and distribute its assets in this State to the creditors, a policy holder whose policy has not been cancelled may recover for a loss which accrued after the receiver's appointment. (Page 396.)

6. APPEAL AND ERROR—HARMLESS ERROR.—Where a surety company signed three several annual bonds for $20,000 each, to indemnify persons having claims against an insurance company during three successive years, and it appears that the liabilities which accrued for any one of these years did not exceed $20,000, the failure of the chancellor to segregate the amounts found due on the several bonds was not prejudicial error. (Page 397.)

7. RECEIVERS—COSTS.—In the case of a receivership the fees allowed to the successful plaintiff for the receiver and his attorney should be taxed and paid out of the fund collected and distributed by the receiver, and should not be taxed against the defendant as part of the costs. (Page 398.)

8. INSURANCE—ALLOWANCE OF ATTORNEY'S FEES.—Statutes allowing attorneys' fees to be taxed against insurance companies are sustainable as a proper exercise of the police power of the State. (Page 398.)

9. SAME—INSOLVENCY—PENALTY AND ATTORNEYS' FEE.—Where persons with claims against an insurance company, not having sued elsewhere, voluntarily intervened and submitted their claims to a court of chancery, which had appointed a receiver to collect and distribute the assets of such company, such interveners will not be entitled to recover the statutory penalty and attorney's fees. (Page 399.)

10. APPEAL AND ERROR—CONCLUSIVENESS OF AGREED STATEMENT.—Where it was agreed that all claims against an insurance company not appealed from should abide the decision of certain claims appealed from, and the amounts due upon the claims appealed from were agreed upon, such agreement will be enforced as to the claims not appealed from. (Page 400.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed in part.

### STATEMENT BY THE COURT.

On the 4th day of December, 1907, J. A. Flemister filed a complaint in the Pulaski Chancery Court, in which he alleged in substance that the defendant, National Mutual Fire Insurance Company, of Omaha, Nebraska, a corporation organized and incorporated under the laws of Nebraska, had been engaged in the business of general fire insurance in this State. That, before engaging in business here, it had filed a bond as required by law with the Federal Union Surety Company of Indianapolis, Indiana, as surety; and had otherwise complied with the laws of the State in regard to foreign insurance companies. That in the city of Omaha, State of Nebraska, a general receiver had been appointed to take charge of the assets of said company and to wind up its affairs on the ground of insolvency. That he was a creditor of said company in this State by virtue of holding two of its policies of insurance. That he files the complaint on behalf of himself and all others similarly interested, and asks that a receiver be appointed to take charge of the assets of said company in this State. The chancellor appointed a receiver in accordance with the prayer of the complaint.

The Federal Union Surety Company asked, and was granted, permission to be made a party to the action. It alleged that it was the surety on the bond of said insurance company. It asked that all parties asserting claims against it be required

to file them in said chancery court, and prayed for an injunction to be granted, restraining such parties from proceeding against it elsewhere. The court granted the injunction. No objection was made by parties having claims against said surety company. All parties interested filed interventions asserting their claims, and voluntarily submitted themselves to the jurisdiction of the chancery court; and the liability of the Federal Union Surety Company was treated by the parties and by the chancery court as an asset of the insurance company to be collected and distributed to the creditors.

The National Mutual Fire Insurance Company of Omaha, Nebraska, applied for and obtained permission to engage in business in this State, and, pursuant to the statutes of the State, executed three separate bonds: for the insurance year of 1905, ending March 1, 1906; for the insurance year of 1906, ending March 1, 1907; and for the insurance year 1907, ending March 1, 1908. Each of said bonds is for the sum of $20,000, and is conditioned as follows: "Now, therefore, if the said National Mutual Fire Insurance Company of Omaha, Nebraska, shall promptly pay all claims arising and accruing to any person or persons by virtue of any policy issued by the said company during the term of this bond upon any property situated in the State of Arkansas, when the same shall become due, and shall pay to the State of Arkansas all such sums of money as shall be adjudged against them for the violation of any of the provisions of an act of the General Assembly of the State of Arkansas, approved January 23, 1905, entitled 'An act for the punishment of pools, trusts and conspiracies to control prices,' then this obligation to become void; otherwise to remain in full force and effect."

The policies issued by the company in this State were in the usual form of stock policies, and among other provisions contained the following: "This policy shall be cancelled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void, or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice

it shall retain only the *pro rata* premium. * * * The holder of this policy incurs no other or greater liability for premium or otherwise than that expressly provided in this policy." All fire losses occurred before the receiver was appointed, except in the case of W. H. Cajul, which occurred afterwards.

There is no dispute in regard to the amount of the claims. After the receiver was appointed, all persons having policies and who had not suffered fire losses were permitted to come in and surrender their policies to the receiver for cancellation, and prove their claims for the unearned premiums.

On the final hearing of the case the chancellor found in favor of all the claimants except W. H. Cajul, and held that the Federal Union Surety Company was liable therefor. In the case of W. H. Cajul, the chancellor held that the appointment of the receiver cancelled the policies by operation of law, and, his fire loss having occurred after the receiver was appointed, the surety company was not liable. A decree was entered against the Federal Union Surety Company in favor of the respective claimants.

In addition, the chancellor fixed the amount of fees that should be allowed the receiver and his attorney, and adjudged that said surety company should pay the same as well as all costs of the suit.

The case is here on appeal.

*J. W. & M. House,* for appellant.

A policy of a mutual insurance company is not cancelled by the appointment of a receiver. 56 N. Y. S. 83. When a bond is given for only one year, the surety is bound only for that year. 65 Fed. 476; 11 Fed. Cas. No. 6114; 4 Dil. 185; 26 Am. R. 703; 29 *Id.* 230; 59 Ill. 172; Brandt on Sur. 187; 67 Cal. 505; 130 Mass. 242; 7 Barb. 581; 5 Cow. 424; 3 Cow. 151; 17 Mass. 603; 2 Leigh 157; 87 Ala. 334; 6 Am. St. R. 456. The policy holders are members of the company. 109 N. Y. S. 367; 21 How. 35; 9 Col. 77; 3 S. W. 385; 21 N. Y. 67; 86 Pa. 367; 79 Wis. 492. And they are bound by the rules of the company and the laws of the State. 43 N. J. Eq. 522; 64 Am. St. R. 715; 90 N. W. 926; 96 N. W. 327. As to whether a policy holder is entitled to a return of the unearned premium, see 52 N. W. 744. The premiums in a mutual company constitute a fund,

and must ·be exhausted before liability on the bond would attach.   66 Atl. 1072; 98 Am. Dec. 89; 45 *Id.* 656; 71 *Id.* 662. The court erred in taxing as costs attorney's fees and receiver's fees.   60 Ia. 70; 62 Ga. 146; 86 N. W. 466; 37 N. Y. 536; High on Rec., § § 339, 805, 810.   The findings of a chancellor, in a case tried on depositions, will ·be reversed if against the weight of the evidence.   71 Ark. 605; 63 Ark. 314; 68 Ark. 134; 72 Ark. 67; 73 Ark. 489; 75 Ark. 52; *Id.* 72; 77 Ark. ,216; *Id.* 303; 75 Ark. 75; 83 Ark. 343; 85 Ark. 105; 68 Ark. 314; 75 Ark. 9.

*C.* S. *Collins* and *Bradshaw, Rhoton & Helm,* for appellee.

The liability of the insurance company is fixed ·by the terms of the policy.   *American Insurance Co.* v. *Haynie,* 91 Ark. 43; 89 Ark. 378; 52 Ark. 201.   The State has the right to regulate insurance companies.   76 Ark. 303; 26 L. R. A. 295; 126 Mo. 281; 129 Ia. 725; Cooley's Briefs, Ins., 57.   The by-laws of the company do not form a part of the contract unless referred to in the policy.   8 Cush. 393; 44 N. J. Eq. 224.   A member of a mutual company is not liable on future assessments.   70 Am. St. R. 149; 63 Ill. 187; 57 Ill. 354; 9 How. Pr. 45; 162 Pa. 638; 86 N. W.   831; 101 N. W. 938; 87 Minn. 392; 49 Minn. 291; N. Y. S. 478; 28 Mo. App. 215; ·2 Tenn. Ch. 727; 111 U. Ill. 79; 59 Wis. 162; 91 Mo. App. 339; 77 N. H. 583.   The insolvency of the company constitutes a breach of its contract. 78 N. Y. 114; 34 Am. R. 522; 85 Ala. 401; 162 Pa. 586; 42 Am. St. R. 844; 38 L. R. A. 97.   The bond covers unearned premiums.   112 Fed. 599.   The unearned premium should be returned.   33 L. R. A. 551; 130 Ind. 332; 49 Minn. 291; 60 N. Y. S. 478; 28 Mo. App. 215; 2 Tenn. Ch. 727; 111 U. S. 264.

*Carmichael, Brooks & Powers* and *Funk & Funk,* for intervener.

The liability of the insurance company is fixed !by the policy of insurance.   52 Ark. 201.   But the liability of the sureties on the bond is fixed by the bond.

Hart, J. (after stating the facts).   Counsel for the Federal Union Surety Company insist that its principal was a mutual fire insurance ·company organized under the laws of the State

of Nebraska, and that, by virtue of the laws of that State, the articles of incorporation and the by-laws of the company, its policy holders became members of the company, and as such were not entitled to a return of the unearned premium.

In making this contention learned counsel have not duly considered the effect of our statutes on foreign mutual insurance companies.

It is settled that the Legislature may dictate the terms upon which such companies may do business in the State. *Hartford Fire Insurance Co.* v. *State,* 76 Ark. 303; *State* v. *Lancashire Fire Ins. Co.,* 66 Ark. 466.

The General Assembly of the State of Arkansas in 1905, among other conditions imposed upon foreign mutual insurance companies as a prerequisite to their doing business in the State of Arkansas, provided as follows: "Section 4. All foreign mutual fire insurance companies authorized to do business in this State shall annually give a qualified indemnity bond to the State of Arkansas, with not less than three good and sufficient sureties, or with a surety, trust or indemnity company authorized to do business in this State, as surety, to be approved by the Auditor of State, in the sum of twenty thousand dollars, conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued by any such company upon any property situated in the State, and said bond shall be in full force and effect during the lifetime of any policy issued by said company."

A comparison of the provisions of the above section with those prescribing the conditions of the bond of stock insurance companies will show that in all essential particulars they are the same. Acts of Arkansas, 1905, p. 772, and Kirby's Digest, § 4339.

The effect of this statute is to make the liabilities of foreign mutual insurance companies doing business in this State under policies issued by them here the same as those of stock fire insurance companies.

In the case of *Minneapolis Fire & Marine Mutual Insurance Company* v. *Norman,* 74 Ark. 190, the court held (quoting syllabus): 1. "Where a foreign insurance company, authorized to insure property upon the assessment plan, gave the bond required of stock companies issuing standard policies, and pro-

ceeded to issue policies on the standard plan, instead of the assessment plan, it can not, after receiving the benefit of such contracts, invoke the doctrine of *ultra vires* to defeat an action brought against it on such a contract."

2. "A surety on the bond of a foreign mutual fire insurance company, executed to enable it to do a standard, and not a mutual, insurance business, can not plead as a defense that the policies issued by the company were *ultra vires.*"

The effect of this decision is to hold that the charter powers, by-laws and the laws of the State under which the company was organized do not determine the character of the insurance issued, but that it is settled by the terms of the policy and the laws of this State. This was evidently the view taken of our statute by the National Mutual Fire Insurance Company; for it issued policies in this State in the usual form of standard policies issued by stock insurance companies.

The policies provided that the insured incurred "no other or greater liability for premium or otherwise than that expressly provided in this policy." This provision is inconsistent with the idea that the policy holder was a member of the company, and should be liable for losses sustained by other members.

The policy also contained a clause providing for the cancellation of the policy by the insured and the payment to him of the unearned premium, and, as above stated, it conformed in all other respects to the form of standard policies issued by stock insurance companies. The policies do not refer to the articles of incorporation or the by-laws of the company.

Therefore the right of the policy holder to a return of the unearned part of the premium on account of the insolvency of the insurer is the same in this case as in that of a stock company. The rule in such cases is well stated by the annotation to the case note to *State* v. *Minnesota Title Insurance & Trust Company,* 19 L. R. A. (N. S.) 639. It is as follows: "As to stock companies, the courts are in harmony in holding that the insured, upon the dissolution of the company, is a creditor to the amount of the unearned premiums."

In *Franzen* v. *Hutchinson,* 94 Iowa 95, 62 N. W. 698, it was held that local policy holders of a foreign insurance company, which had made an assignment for creditors in a different State, could avail themselves of a clause in their policies author-

izing them to cancel the same and demand the unearned portions of premium which they had paid, and that they could enforce these demands against any property of the company within the State. See also 22 Cyc. 1405 and note 27.

2. The court erred in holding that the policy of W. H. Cajul was cancelled by operation of law at the time of the appointment of the receiver. As we have already seen, the insurance company in question was a foreign corporation. The courts of this State had no authority to dissolve the corporation or wind up its business. The chancery court had only authority to appoint a receiver to collect and distribute its assets in this State to the creditors. *Culver Lumber & Manufacturing Co.* v. *Culver,* 81 Ark. 102. There was no adjudication of insolvency, and no decree dissolving the corporation in the present case. Moreover, no order of court had been made cancelling the policy of Cajul. As we have already held, the act of 1905 made the insurance company in effect a stock company, as far as the Arkansas policies are concerned, and the insurance contracts were not terminated by the appointment of the receiver. *Insurance Commissioner* v. *People's Fire Insurance Co.,* 44 Atl. 82, 68 N. H. 51. At the time Cajul's property was destroyed by fire his policy had not been ordered cancelled, and his claim was provable against the estate of the insurance company. Hence the Federal Union Surety Company was liable therefor.

3. Mrs. M. B. Evans filed an intervention based upon a policy for $1,000 issued by the National Mutual Fire Insurance Company, dated May 21, 1907, on a certain hotel near Rogers, Arkansas, which was afterwards destroyed by fire. The chancellor found in favor of Mrs. Evans for the face of her policy, and it is conceded by counsel that the only question raised by the appeal is whether or not the finding of the chancellor that said insurance company did, at the time the policy was issued, have notice of the fact that other policies of insurance had been previously issued on said property is against the preponderance of the evidence; for it is conceded that, if McLeod had notice of the other insurance, Mrs. Evans is entitled to recover. Mrs. Evans testified that at the time she applied for the insurance in question she informed McLeod, the agent of the company, that she had a policy for $1,000 in the Citizen's Fire Insurance

Company. McLeod denies that she gave him this information, but says she told him that she had no other insurance.

T. R. Smallwood testified that he went with Guy E. Thompson to the office of McLeod for the purpose of adjusting the loss of Mrs. Evans, and that, while there, Mrs. Evans stated to McLeod that she never gave him any notice of other insurance, and that McLeod stated to her that she positively did not give any notice.

Thompson relates the conversation in this way. He said that McLeod stated to her that he had no knowledge of the prior insurance, and his recollection is that she made no reply at all. It appears that soon afterwards Mrs. Evans left the office for the purpose of consulting with friends as to whether she should sign a non-waiver agreement which had been presented her in McLeod's office. It will be remembered that the question is whether or not Mrs. Evans gave McLeod notice of the prior insurance at the time she applied to him for the policy. Mrs. Evans claims she gave him such notice and McLeod denies it. Smallwood attempted to corroborate McLeod by testifying that Mrs. Evans admitted at McLeod's office that she had not given him notice of the prior insurance. In this, however, he is contradicted by Thompson, who stated that she made no reply to McLeod when he stated that she had not given him the notice. Under the circumstances, her failure to reply might have been considered of no probative force against her. She was at the same time being pressed to sign a non-waiver agreement, and no doubt thought it prudent to say nothing until she had consulted with friends, which the evidence shows that she did at once. Other circumstances in connection with the matter tended to corroborate her testimony, and, everything considered, we are of the opinion that the finding of the chancellor is not against the weight of the evidence.

4. The record shows that the Federal Union Surety Company signed each of the bonds, and that each bond was for $20,000. It further shows that the liabilities that accrued for any one year did not exceed the sum of $20,000. Therefore no prejudice can result to the surety company from the failure of the chancellor to segregate the amounts found to be due on the several bonds, and it is well settled that this court only reverses for errors that are prejudicial to the rights of the appellant.

5.   The chancellor was of the opinion that the Federal Union Surety Company should pay the fees allowed the receiver and his attorneys, and so provided in the decree. This was error. The fees allowed them in cases like this should be taxed and paid out of the fund collected and distributed by the receiver. The costs which a successful litigant may recover do not include fees allowed to a receiver and to his attorneys. *Bradshaw* v. *Bank of Little Rock,* 76 Ark. 501.

The question whether the claimants of fire losses were entitled to attorney's fees under the act of March 29, 1905, at p. 308, is not before the court, for the reason that no claim under this act was made in the court below.

We find that the court erred in not allowing the claim of W. H. Cajul, and in taxing the fees of the receiver and his attorneys against the Federal Union Surety Company, and in that respect the decree is reversed, and the cause remanded with directions to the chancellor to enter a decree in accordance with this opinion.

In all other respects the decree is affirmed.

### ON REHEARING.

#### Opinion delivered July 11, 1910.

HART, J.   Appellees (claimants for fire losses) have filed a motion for rehearing on the ground that the court erred in not allowing each of them an attorney's fee.

The claim is based upon the statute of Arkansas enacted at its 1905 session, which is as follows:

"In all cases where loss occurs, and the fire, life, health or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to the holder of such policy, in addition to the amount of loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed as part of the costs therein and collected as costs and as may be by law collected." Acts 1905, p. 308.

Statutes allowing attorneys' fees to be taxed against railroad and insurance companies have been sustained as a proper

exercise of the police power of the State. *Kansas City Southern Railway Company* v. *Marx,* 72 Ark. 357; *Arkansas Insurance Company* v. *McManus,* 86 Ark. 115.

Upon examination of the record in the present case, we find that claimants for fire losses did ask for the twelve per cent. penalty and attorney's fees under the statute above quoted. The chancery court failed to allow an attorney's fee in each intervention; but allowed the receiver an attorney's fee, which we held in our original opinion must be paid out of the fund administered by him. None of the claimants for fire losses in this case instituted suits in the law courts against the insurance company before the appointment of the receiver to recover the amount alleged to be due them; but, on the contrary, the record affirmatively shows that all such claimants voluntarily came into the chancery court after the receiver was appointed and filed an intervention in the insolvency proceedings, for the purpose of recovering the amount alleged to be due for fire losses. In these interventions, the penalty and attorney's fees provided by the Acts of 1905 were asked for as part of the relief to which they were entitled. We held in the original opinion that, having voluntarily submitted themselves to the jurisdiction of the chancery court, they, by so doing, treated the liability of the surety as an asset of its principal, to be collected and distributed according to the principles governing courts of equity. The act of 1905 in question can not affect the jurisdiction of chancery courts or enlarge their powers. *Gladish* v. *Lovewell, post* p. 618; *Hester* v. *Bourland,* 80 Ark., p. 145; *Mississippi Railroad Commission* v. *Gulf & S. I. Rd. Co.,* 78 Miss. 750; *Broadnax* v. *Baker,* 94 N. C. 675.

"It is a universal rule in equity never to enforce either a penalty or a forfeiture." 2 Story on Equity Jurisprudence, § 1319.

No suits having been instituted against the insurance company to recover for fire losses until the receiver was appointed, and the claimants then having voluntarily submitted themselves to the chancery court to try their claims, we think it is in accordance with the established principles of equity not to allow either the twelve per cent. penalty or the attorney's fees.

Counsel for the Federal Union Surety Company contend that the policies of insurance are cancelled by act of the insured,

and that the basis of settlement should be the rate paid for a short term policy. In short, that the insurance company is entitled to charge the customary short rates, and the policy holder is only entitled to the difference between the amount paid by him and the short rate. In support of his contention, he cites the following cases: *Insurance Commissioner* v. *People's Fire Ins. Co.*, 68 N. H. 63; *McKenna* v. *Firemen's Insurance Co.*, 63 N. Y. Supp. 164; Ex parte *Independence Ins. Co.*, 13 Fed. Cas. 12; *State Ins. Co.* v. *Homer*, 23 Pac. 788; *Van Valkenburgh* v. *Lenox Fire Ins. Co.*, 51 N. Y. 468; *Burlington Ins. Co.* v. *McLeod*, 34 Kan. 192. As an abstract proposition of law, we think the views of counsel are correct, but we also are of the opinion that the state of the record in the case precludes him from availing his client of that principle of law. The record shows that the case was tried upon an agreed statement of facts. Appeals have been taken only in the cases of certain named claimants; and the amount due them are specifically agreed upon in the record. It is agreed that the other cases shall abide the result of these appealed from. The chancery court directed the receiver as master to prepare and file a statement of the names of the persons and the amounts due them on unearned premiums. Exceptions were filed to the report of the master on the specific ground that the surety company was not liable, but no exceptions were made on the ground that the amounts found due were erroneous, or that they were ascertained on an improper basis. Then, as above stated, an agreement was made that all such claims should abide the result of those appealed to this court, and the amounts due on those appeals were agreed upon. Hence we conclude that, under the state of facts as disclosed by the record, the motion for a rehearing on this ground should be denied. On the conclusiveness of agreed statements upon this court, see *Evins* v. *Batchelor*, 61 Ark. 521.

Rehearing denied.