JOHNSON·& COTNAM *v.* BAXTER.

Opinion delivered May 19, 1913.

1. FRAUD—FRAUDULENT REPRESENTATIONS.—The general agents of an insurance company are not liable in damages to a policy holder for fraudulent representations that the insurance company was solvent, when it was in fact solvent when the representations were made.  (Page 355.)

2. INSURANCE—RECEIVERSHIP.—Where a foreign fire insurance company was embarrassed but not adjudged insolvent, and the chancery court appointed a receiver to wind up its affairs in this State, the holder of an uncanceled policy may recover for a loss occurring after the appointment of the receiver.  (Page 355.)

3. INSURANCE—DISALLOWANCE OF CLAIM—DUTY OF INSURED.—Where the affairs of an embarrassed fire insurance company have been placed in the hands of a receiver, and an agent of the company presents to the court for allowance the claim of a policy holder growing out of a fire loss, and the agent notified the insured of the disallowance of the claim, and the court's reason therefor, it is the duty of the insured to prosecute an appeal from the decision of the chancellor, if he, desired the enforcement of the claim. (Page 356.)

Appeal from Chicot Circuit Court; *Henry W. Wells,* Judge; reversed.

STATEMENT BY THE COURT.

R. M. Baxter instituted this action in the circuit court against Johnson & Cotnam to recover damages suffered on account of certain alleged false representations made by the defendants to the plaintiff.  On November 28, 1908, the Southern Insurance Company of New Orleans, through Johnson & Cotnam, its general agents in the State of Arkansas, issued a policy for one thousand dollars in favor of R. M. Baxter on certain lumber situated at Eudora, Ark.  Herman Carlton was the local agent of the company and procured the policy.  Carlton delivered the policy to a Mr. Stevens who was cashier of the bank at Eudora and the agent for Baxter.  In January, 1909, Carlton learned that the affairs of the insurance company were in an insolvent condition, and notified Baxter and asked him to send in his policy so that it might be cancelled and the insurance rewritten in an-

other company. Baxter, through his agent, Stevens, sent the policy to Carlton as requested. Before the policy was cancelled, Johnson & Cotnam wrote to Carleton as follows:

"Little Rock, Ark., January 20, 1909.
"Mr. H. Carlton, Lake Village, Ark.

"Dear Sir: We are in receipt of telegram from Southern, stating that they have decided to cease writing business, and to cancel all policies issued after the 18th of this month; hence, we must request cancellation and return of policy 26673, Sam Epstein. Kindly return Southern supplies.

"Yours truly,
"Johnson & Cotnam,
"General Agents."

On January 24, Herman Carlton wrote to Johnson & Cotnam as follows:

"I notice by the papers that the Southern has gone into the hands of a receiver. Kindly advise me what you know about it, and if you have reinsured the line written from my agency. An immediate reply will greatly oblige.

"Yours truly,
"Herman Carlton."

In reply, Johnson & Cotnam wrote the following:

"Little Rock, Ark., January 25, 1909.
"Mr. Herman Carlton, Lake Village, Ark.

"Dear Sir: In reply to your letter of the 24th, will state the writer has just returned from New Orleans and finds the Southern has ample funds with which to pay all losses, and will close a deal with the Peoples National, a million-dollar company of Philadelphia, for reinsurance today or tomorrow.

"Yours truly,
"Johnson & Cotnam,
"General Agents."

On January 28, Johnson & Cotnam telegraphed to Carlton as follows:

"Do not cancel Southern policies; protection good; see letter."

The letter referred to in the telegram is as follows:

"Little Rock, Ark., January 28, 1909.

"Mr. Herman Carlton, Lake Village, Ark.

"Dear Sir: We confirm our telegram asking you not to cancel Southern policies. We have arranged with the Fidelity & Deposit Company for them to assume payment of any losses that may occur under Southern policies in connection with liabilities that now exist to the extent of $20,000.

"The assets of the Southern are in good condition and ample to meet outstanding claims. We hope to be able to send you policies to be substituted for the policies of the Southern in a short while. In the meantime, you can rest assured your customer is protected by the policy which he has.

"Yours very truly,

"Johnson & Cotnam,

"General Agents."

Upon receipt of this letter, Carlton sent the policy back to Stevens, and notified him that the company was good; that he had had a communication from Johnson & Cotnam to that effect. On February 2, 1909, a fire occurred in the plaintiff's lumber plant at Eudora, and his lumber was damaged to the extent of one thousand dollars. On January 21, 1909, in a suit brought by the State of Louisiana, a receiver was appointed for the Southern Insurance Company. There was an ancillary receiver in this State, and on the 22d day of January, 1909, T. T. Cotnam, one of the defendants, was appointed as such receiver, and served without pay. He took charge of the assets of said insurance company in this State, and its affairs here were wound up and settled in the Pulaski Chancery Court. It had assets in this State to the value of four thousand dollars, which were collected and taken charge of by the receiver. The Fidelity & Deposit Company of Maryland was surety on the company's bond in this State to the amount of twenty thousand dollars. The surety company deposited the full amount of its bond in the hands of the receiver to be used by him in settling

claims against the company. The surety company was made a party to the insolvency proceedings. Johnson & Cotnam wrote Carlton after Baxter had suffered the fire loss that it would be necessary for Baxter to file an intervention in the insolvency proceedings in order to recover the amount of his policy. They sent a form to him, and this was returned after having been filled out and duly signed by Mr. Baxter. Carlton said that he saw the defendant Cotnam with reference to the intervention, and asked him if Baxter should employ a lawyer, or whether they would look after the claim for him. That Cotnam told him that Baxter would not have to employ an attorney; that he would look after the claim to the extent of filing the intervention for him. The intervention for Baxter in the sum of one thousand dollars was duly filed in the chancery court and presented to the court with the other claims filed in the insolvency proceedings. The court disallowed the claim of Baxter on the ground that the fire occurred after the receiver had been appointed. The claim of Baxter was filed in the chancery court on the 19th day of April, 1909. One June 25, 1909, the decree of the chancellor disallowing the claim of Baxter, was entered of record, and Baxter admits that Cotnam told him shortly afterward that the claim had not been allowed by the chancery court. Shortly after this, Roy Campbell, an attorney at Little Rock, spoke to the receiver about Baxter's claim, and the circumstances of its disallowance were related to him by Cotnam.

Carlton testified that after the claim had been disallowed, he talked with Mr. Cotnam about a settlement, and Cotnam asked him to take the matter up and see if Baxter would settle for 85 per cent of his claim. After taking the matter up with Baxter, Carlton told him they would accept that amount, and Cotnam and the agent of the surety company, after consultation between themselves, reported to him that they could not pay the 85 per cent of the claim, giving as a reason therefor that the claim was for a loss which occurred after the appointment of a receiver, and on that account the claim had

been disallowed. On October 11, 1909, the present suit was instituted. The claims which were allowed by the court amounted to $22,170.64, and the assets of the company in the State of Arkansas, including the amount of the bond above referred to, were $24,000.

There was a verdict and judgment for the plaintiff, and the defendants have appealed.

*J. W. & J. W. House, Jr.,* for appellant.

1. Before a representation is actionable, it must be, (1) material; (2) it must be made by one who either knows it to be false, or not knowing, asserts it to be true; (3) it must be made with the intent to have the other party act upon it to his injury, and such must be its effect. 99 Ark. 442; 38 *Id.* 311; 101 *Id.* 100; 97 *Id.* 268; 19 *Id.* 18; 46 *Id.* 250. There was no misrepresentation. Fraud is never presumed. 11 Ark. 383.

2. The mere expression of an opinion can not furnish cause of action based upon fraudulent conduct or action. 137 Fed. 744; 50 S. W. 596; 120 Mass. 495; 101 Ill. App. 541; 140 Fed. 888; 6 Pa. Sup. 536; 32 Am. Rep. 569; 108 N. W. 723; 89 N. W. 638; 71 Conn. 1; 43 S. E. 52; 85 S. W. 174.

3. Appellee should have appealed. 95 Ark. 396.

4. False representation is not actionable unless it is made with knowledge of its falsity. 93 S. W. 810; 31 Ark. 289; 52 Am. Dec. 338; 25 *Id.* 54; 35 *Id.* 339; 52 Am. Rep. 285.

*B. F. Merritt,* for appellee, argued the cause orally.

HART, J., (after stating the facts). The plaintiff, in his complaint, bases his right to recover on the alleged fraudulent representations made in the letters set out in the statement of facts. The particular representations which he alleges were false and which were made with intent to deceive him, and which were relied upon by him to his loss and injury, are contained in a letter written by the defendants to Carlton on the 28th day of January, 1909. In that letter, the defendants stated that the assets of the Southern Insurance Company were in good condition and ample to meet the outstanding claims. In it the

defendant stated: "We have arranged with the Fidelity
& Deposit Company for them to assume payment of any
losses that may occur under Southern policies in con-
nection with liabilities that now exist to the extent of
$20,000."

The natural effect of this statement would be to re-
press any further inquiry upon the part of the plaintiff
as to the solvency of the insurance company, and to lull
him into a sense of security as to his policy. Represen-
tations of this character, if false and made with intent
to deceive the plaintiff, and relied upon by him to his
loss and injury, are actionable. The undisputed evi-
dence, however, shows that the statement was true in
every respect, and was made by the defendants in good
faith. The receiver had in his hands four thousand dol-
lars of the assets of the company. In addition to this, he
had made an agreement with the surety company to de-
posit in the chancery court the sum of $20,000, the full
amount of the bond upon which it was liable as surety,
and under the agreement, the amount of the bond was to
be administered as assets of the company. This made the
sum of $24,000 as available assets of the company at the
time the letter was written. The claims proved and al-
lowed by the court amounted to $22,170.64. Thus, it will
be seen that the assets were sufficient to pay all the out-
standing claims against the company. It is true the chan-
cellor disallowed the claim of the plaintiff, but under the
ruling of this court in the case of the *Federal Union
Surety Co.* v. *Flemister,* 95 Ark. 389, his action in so hold-
ing was error. In that case, which was decided after the
chancellor had refused to allow the claim of the plaintiff
in the present case, the court, in deciding a precisely sim-
ilar question, held:

"1. The courts of this State have no authority to
dissolve a foreign corporation, but may appoint a re-
ceiver to collect and distribute its assets in this State to
its creditors.

"2. Where there was no adjudication of the insol-
vency of a foreign mutual insurance company, and no

decree dissolving the corporation, but there was an order of a chancery court appointing a receiver to collect and distribute its assets in this State to the creditors, a policy holder whose policy has not been cancelled, may recover for a loss which accrued after the receiver's appointment.''

So it may be said that if the plaintiff had prosecuted an appeal from the action of the court in not allowing his claim, he would have recovered. Not having done so, he is in no attitude to complain of the defendants. Cotnam presented his claim to the chancellor for allowance, and the chancellor disallowed it on the ground that the loss occurred after the receiver had been appointed. Cotnam notified him of the ruling of the chancellor and of his reasons for so holding. It was not then the duty of Cotnam to prosecute an appeal from the decree of the chancellor. It was the duty of the plaintiff, himself, to do that. Hence, the loss suffered by the plaintiff arose from his neglect to prosecute an appeal from the decree of the .chancellor refusing to allow his claim, and his loss did not result from any false representations made to him by the defendants in regard to the ability of the insurance company to pay losses on claims outstanding against it. The representations made by the defendants to the plaintiff in the letters set out in the statement of facts were true in every respect, and did not cause his loss in the present case. The testimony on this question is undisputed, and no inference unfavorable to the view we have expressed could be deduced from it.

It follows that the court erred in not directing a verdict for the defendants as requested by them, and for this error, the judgment must be reversed, and, it appearing that the case has been fully developed, and that no other testimony favorable to the plaintiff could be obtained on a new trial of the case, it is ordered that the ·complaint of the plaintiff be dismissed.