(1)   National Union Fire Insurance Company *v.* Bynum.

(2)   Walker *v.* Boykin.

Opinion delivered June 22, 1931.

(1)  *Verne McMillen,* for appellant.

*John Baxter,* for appellee.

(2)  *Robinson, House & Moses,* for appellant.

*Roberts & Stubblefield,* for appellee.

SMITH, J.  W. B. Bynum owned a large sawmill plant, upon which he carried insurance amounting to $169,500. This insurance was written by a large number of insurance companies, and three of the policies, aggregating $10,000, were written by the Home Fire Insurance Company, of this State. A fire occurred, and the loss as adjusted amounted to $137,770.10.

Each of the insurance policies covering this property contained what is commonly called the *pro rata* clause, which provides that each insurance company shall only be liable to the insured for its *pro rata* amount of the insurance carried on the property, "whether valid or not or whether by solvent or insolvent insurers."

Certain of the insurance companies insisted that the insurance written by the Home Fire Insurance Company should be taken into account in determining the extent of their liability, and offered to pay on that basis, but, when they refused to pay except on that basis, suit was brought to enforce *pro rata* liability without taking into account the policies written by the Home Fire Insurance Company.

The fire occurred December 1, 1930, but prior thereto a suit had been filed by the Attorney General to dissolve

the Home Fire Insurance Company and to wind up its affairs.

It was alleged in the complaint filed by the Attorney General that the Home Fire Insurance Company was a domestic insurance corporation, being incorporated under the laws of this State, and that the State Insurance Department had "certified the defendant company to the Attorney General as an insolvent insurance company, to have its affairs wound up and administered as provided by law." It was alleged that the company was insolvent, and that to preserve its assets for the benefit of its creditors it was necessary that some person be appointed "to take charge of all the assets, of every kind and character, of said company, to make an inventory of its property, and to handle and manage it under the proper orders of this court." It was alleged that an opportunity had been given the company for a hearing as to the status and condition of its affairs as provided by law, but that the company had waived this right and admits its insolvency. Wherefore it was prayed that the court, "by proper judgment and order, appoint some suitable person to take charge of said insolvent company and to administer its affairs under the order of this court."

On November 24, 1930, which was, of course, prior to the date of the fire, an order and judgment was entered by the court granting the relief prayed by the attorney general. This judgment recites the appearance of the insurance company, and its confession of the allegations of the complaint, and its consent that the "court may appoint a receiver as provided by law," and that the court, "being well and sufficiently advised in the premises, doth find from the evidence that the said insurance company is insolvent, that its reserves are clearly impaired, and that a receiver should be appointed by this court as provided by law." It was thereupon ordered that Elmo E. Walker be appointed receiver, to take charge of all the assets, books, papers, etc., of the com-

pany, and that "he proceed to the administration of the affairs of said company until the further orders of the court," to which end he was authorized to employ such attorneys and assistants as was necessary in the administration of the affairs of the company, and "that he be and he is hereby empowered to collect premiums and bills receivable, to pay such operating expenses of said company as is necessary, and to do any and all other things necessary to consummate and carry out said receivership; that all officers, directors, officials, agents, or employees of said defendant insurance company be and they are hereby directed to turn over to said receiver all books, records, fixtures, equipment, moneys, bills receivable, real estate, and all other assets of every kind, nature or character at once."

All persons were enjoined from interfering with the administration of the receiver and the order was to be effective upon the execution of the bond there provided for and the taking of the oath required by law. The receiver had qualified and had entered upon the discharge of his duties as such at the time of the fire. Certain other facts were stipulated which we need not recite.

A number of suits which were brought in Chicot County against the insurance companies which resisted payment were consolidated for trial, and the court was asked on their behalf to make the following declaration of law:

"That the appointment of a receiver for the Home Fire Insurance Company did not dissolve the corporation and did not cancel the policies issued by the Home Fire Insurance Company to the plaintiff, and that said policies were a part of the whole insurance covering the property described in the policies sued on herein, within the meaning of that provision in each of the policies issued by the defendant which provides: 'This company shall not be liable under this policy for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insur-

ance, whether valid or not, or by solvent or insolvent insurers.'

"That the plaintiff is entitled to recover only that proportion of the loss from each defendant which the amount of its policy bears to the whole insurance, and, each defendant having tendered that amount to the plaintiff in its answer, plaintiff should have judgment against the defendants only for the amounts tendered, with the costs which accrued up to the time the answers were filed."

The court declined to so declare the law, but, upon the contrary, declared the law to be that the appointment of a receiver canceled the policies of insurance issued by the Home Fire Insurance Company, and that those policies could not be considered as a part of the whole insurance covering the loss or damage to the property described in the policies sued on, and a judgment was rendered accordingly, including a penalty of twelve per cent. and an attorney's fee. No complaint is made of the fee allowed the attorney, but it is insisted that in any event the penalty was improperly imposed, for the reason that it is in excess of the amount in controversy, as the insurance companies had offered to pay the sum demanded, less the *pro rata* part of the Home Fire Insurance Company policies.

It is urged for the reversal of the judgment of the circuit court that there was no adjudication of insolvency of the Home Fire Insurance Company, and that there was no order dissolving the corporation, and no order canceling its outstanding contracts of insurance; that, on the contrary, the receiver was ordered to proceed with the administration of the affairs of the company, to collect premiums and other bills receivable, and was not authorized or directed to wind up the affairs of the company. The cases of *Federal Union Surety Co.* v. *Flemister*, 95 Ark. 389, 130 S. W. 574, and *Johnson & Cotnam* v. *Baxter*, 108 Ark. 350, 157 S. W. 387, are cited in support of this contention.

We do not review those cases, as they are not applicable to this case. The instant case is governed by the statute under which the Attorney General proceeded, and the order and judgment of the court must be interpreted with reference to the statute upon which it was based.

The Attorney General did not recite the statute pursuant to which he had proceeded, but he was not required to do so. The authority was conferred and the duty imposed upon the Attorney General to institute the proceeding herein recited by paragraph eight of § 5951, Crawford & Moses' Digest, which reads as follows:

"Whenever the Insurance Commissioner shall have reason to believe that any insurance company of this State is insolvent or fraudulently conducted, or that its assets are not sufficient for carrying on the business of the same, or during any noncompliance with the provisions of this chapter, he shall communicate the fact to the Attorney General, whose duty it shall then become to apply to the Supreme Court or the circuit court, or, in vacation, to any of the judges thereof, for an order requiring said company to show cause why their business should not be closed; and the court or judge, as the case may be, shall thereupon hear the allegations and proofs of the respective parties, or appoint some suitable person as examiner to perform such duty and report upon the facts to said court or judge. If it appears to the satisfaction of said court or judge that such company is insolvent, or that the interests of the company so require, the said court or judge shall decree a dissolution of such corporation, and a distribution of its effects; but in case it shall appear to said court or judge that said corporation is able to comply with the provisions of this act, and that it is not insolvent, a decree shall be entered annulling the act of the Insurance Commissioner in the premises and authorizing such company to resume business."

Pursuant to this proceeding the insurance company was adjudged to be insolvent. It is recited that the court "doth find from the evidence that the said defendant

insurance company is insolvent." And that adjudication stands unchallenged and unmodified. Indeed, it appears to have been confessed by the insurance company, and upon this adjudication the receiver was ordered to proceed to the administration of the affairs of said company until the further orders of the court. If there is any ambiguity about this order—and there does not appear to be—it is removed when read in connection with the statute above quoted, pursuant to which said order was made. The statute directs the action to be taken when the order is made which it authorizes, and that direction is that "The said court or judge shall decree a dissolution of said corporation and a distribution of its assets."

The recital in the judgment of the court that the receiver "is hereby empowered to collect premiums and bills receivable" is not to be construed as conferring authority upon the receiver to continue in business as an insurer. The provisions of the statute are to the contrary, and this direction must be construed as an authorization only to the receiver to collect all the assets of the company, including the premiums then due it.

A number of annotated cases which collect and review the authorities on this subject are cited in the notes to § 102 of the chapter on Insurance in 32 C. J., p. 1039, and in the notes to § 20 of the chapter on Insurance in 14 R. C. L., p. 853. In the section last mentioned the law is stated as follows: "While there are some contrary decisions, the weight of authority supports the proposition that, on the judicial adjudication of the insolvency of a stock insurance company and the appointment of a receiver, the outstanding policies of the company are *ipso facto* canceled, and that a claim for a loss thereafter occurring is not a provable claim against the company. The policyholders are creditors for the value of their policies at the time of the breach thus occurring, which, in most cases, is the *pro rata* return premium, though net value in life insurance cannot, of course, be computed in

this manner, and a provision of a statute for a return of the *pro rata* premium on a dissolution of an insurance company does not apply to life policies.''

The reason for this rule is well stated by the Supreme Court of Iowa in the case of *Shloss* v. *Metropolitan Surety Co.*, 128 N. W. 384, to be that ''This conclusion is based on the proposition that, by the decree of dissolution, the company is rendered incapable of carrying out its contracts, its business is brought to an end, and the policyholders become creditors to the amount equal to the equitable value of their respective policies and entitled to participate *pro rata* in its assets; and a settlement of the company's affairs cannot be postponed to await a determination of the contingencies on which its policy engagements are dependent.'' (Citing authorities.)

The judgment in the case of *National Union Fire Insurance Co. et al.* v. *Bynum*, No. 2217, appealed from the Chicot Circuit Court, conformed to this view.

As to the penalties in those consolidated cases, it suffices to say that the plaintiff was entitled to recover, and did recover, the full amount sued for, and the case is therefore within the letter and spirit of § 6155, Crawford & Moses' Digest, which allows the penalty. It is true the difference between the sum demanded and the sum tendered is less than the penalty, but it is true also that it was the refusal to pay this difference which made the institution of the suits necessary. The plaintiffs were not required to accept any sum less than the full amount due under their policies, and they have been put to the expense and have incurred the delay and trouble of a lawsuit to recover that amount. It is this which the penalty compensates, and it was therefore properly assessed. *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123, 235 S. W. 412; *Illinois Bankers' Life Assn.* v. *Mann,* 158 Ark. 425, 250 S. W. 887; *Fidelity Phenix Fire Ins. Co.* v. *Roth,* 164 Ark. 608, 262 S. W. 643; *Bankers' Reserve Life Co.* v. *Crowley,* 171 Ark. 135, 284 S. W. 4; *Fulmer* v. *East Ark. Abstract & Loan Co.,* 173 Ark. 668, 293 S. W. 1018.

Without reciting the facts under which case No. 2208, submitted here under the style of *Elmo Walker* v. *Boykin*, arose, it may be said that the same question of law is presented, and the views here expressed are controlling in that case, and, as it was held by the trial court in that case that the Home Fire Insurance Company was liable, although the loss by fire occurred after the rendition of the judgment appointing the receiver for the Home Fire Insurance Company, that judgment must be reversed.

It follows therefore that the judgment in case No. 2217 (*Insurance Co.* v. *Bynum*) will be affirmed; while the judgment in case No. 2208 (*Walker* v. *Boykin*) must be reversed, and that cause remanded, and it is so ordered.