## NORTH RIVER INS. CO. v. WALKER.
### No. 9624.

Circuit Court of Appeals, Eighth Circuit.
May 9, 1933.

Rehearing Denied June 19, 1933.

Verne McMillen, of Litttle Rock, Ark., for appellant.

W. H. Holmes, of Little Rock, Ark. (John R. Duty, of Rogers, Ark., and Claude Duty, J. W. House, and C. H. Moses, all of Little Rock, Ark., on the brief), for appellee.

Before KENYON and SANBORN, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

The appellee, as plaintiff in the trial court, recovered judgment against the appellant, as defendant, in the aggregate sum of $67,205.-91, and defendant has appealed.

Accepting the designations made by counsel, in this opinion the defendant-appellant will be referred to as the North River, the plaintiff-appellee as the receiver, and his trust as the Home.

The suit was for the recovery of accrued and unpaid losses under a reinsurance arrangement or compact between the North Riv-

er and the Home in the sum of $25,341.74 and for the unearned premiums on canceled policies in the sum of $41,864.17. The North River declined payment upon the sole ground that the Home had breached its contract of reinsurance.

On September 1, 1924, the North River and the Home were each engaged in the fire insurance business and such kindred lines as usually attend that class of insurance. The North River was incorporated under the laws of the state of New York and the Home under the laws of the state of Arkansas. On said date the two corporations entered into a contract or compact which it was agreed in an arbitration clause should be interpreted "rather as an honorable engagement than as a merely legal obligation." By the terms of this contract, arrangement, or "honorable engagement," the Home agreed to reinsure, and the North River agreed to accept for reinsurance from the Home, "the entire first surplus of the 'Assured' (the Home) up to, but not exceeding three times the amount retained by the 'Assured' (the Home) for its own account on the identical property, under its policies against the hazards of fire, lightning, tornado, cyclone, hurricane, wind storm, explosion, strike, riot and civil commotion, issued through all or any of its branches or agencies on risks situated in the states of Arkansas, Louisiana, Mississippi, Texas, Tennessee, Missouri, Kentucky and Illinois." By this arrangement the Home was permitted in exceptional cases to reinsure some of its policies in other companies. Liability upon the North River upon policies reinsured by it was concurrent with that of the Home where the original policy issued by the Home was less than 14 days old. In cases where the liability upon the Home had been effective for a longer period, the liability upon the North River dated from "the inscription of the Reinsured on the reinsurance register of the 'Assured' (the Home)." The nature of the liability of the two corporations on any risk, whether fire loss or otherwise, was to be determined as follows: "It is the intention of the parties hereto that the fortune of all policies to which this contract relates shall affect both parties in their respective proportions alike in every respect." The reinsurance contract, compact, or treaty between the parties contained express provisions for limited cancellations of reinsurances, but it also contained a general provision which, by reference, made the provisions of the policies issued by the Home a part of each reinsurance contract. Said general provision is as follows: "All reinsurance shall be subject to all the condi-

tions and stipulations of the original policy and to the exact proportion of the original premium which the 'Assured' (the Home) itself received."

Adverting to the standard form of policy contract issued by the Home, and particularly the portion relating to cancellation, the following provision is apposite: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this *policy shall be canceled as hereinabove provided or becomes void or ceases, the premium having been actually paid, the unearned portion shall be returned on the surrender of the policy or the last renewal, this company retaining the customary short rate, except that when this policy is canceled by this company by giving notice, it shall retain only the pro rata premium.*" (Italics are ours.)

On November 20, 1930, the Home was adjudicated insolvent, and a receiver was appointed. It was admitted by the parties, and particularly by the answer of the North River, that upon "the adjudication of insolvency of the Home Fire Insurance Company all outstanding policies of the Home Fire Insurance Company were canceled by operation of law." It was further admitted that the North River was indebted to the Home at the date of receivership for unpaid losses in approximately the amount sued for.

It is the contention of the North River, however, that adjudication of insolvency resulted in a breach of its reinsurance treaty or compact, and that by reason thereof the Home, or the Receiver, could not lawfully assert a claim for the reinsurance reserves or unearned premiums on the several policies ceded by the Home to the North River.

Other facts will be stated as they may become pertinent in the course of this opinion.

■ 1. It should be noted at the outset that the contract or engagement between the North River and the Home dated September 1, 1924, amounted to little more than an undertaking on the part of the Home to cede "the entire first surplus" on its policies of insurance to the North River and an agreement on the part of the North River to reinsure such surplus.

This did not constitute an obligation upon the policies, but was a mere working arrangement. In the reinsurances which followed, individual written contracts were not made. The actual contract in case of reinsurance could be ascertained from the provisions of such engagement, and from the terms of the policies issued by the Home. The obligations

of the reinsurance agreement did not impose upon the Home the duty to write insurance, but merely imposed a duty to cede to the North River "the entire first surplus" of such policies as it might write.

The Home was not compelled to continue in the insurance business, but, in the event that it should so continue, then the North River became entitled to reinsure excess lines. If the Home had continued in business, the North River could probably have demanded compliance with the compact, except upon timely notice as provided for the termination of the agreement. When, therefore, the Home was adjudicated an insolvent, the law forbade that it should continue the writing of insurance, and, since it was not bound by any obligation to the North River to continue in the insurance business for a specified time, it violated no duty it owed to the North River. By its insurance treaty it was not obligated to the North River either as to the time it should write insurance, or as to the amount.

■ 2. The legal proposition is accepted by both parties to the effect that, upon adjudication of insolvency and the appointment of a receiver for the Home, the outstanding policies of the Home were ipso facto canceled, and that a claim for loss thereafter accruing was not a provable claim against the company. National Union Fire Insurance Company v. Bynum and Walker v. Boykin (Consolidated Cases) 183 Ark. 1100, 40 S.W.(2d) 446.

■ It would follow from the foregoing that, as the Home was no longer liable upon its policies, the reinsurer would not be liable, as "the liability of the reinsurer is measured by the liability of the reinsured." 33 C. J. 54, § 731; Allemannia Fire Insurance Co. v. Firemen's Insurance Co., 209 U. S. 326, 28 S. Ct. 544, 52 L. Ed. 815, 14 Ann. Cas. 948.

3. It being obvious that the North River was no longer liable upon its reinsurances after the adjudication of insolvency, the last question for consideration is whether it became liable to the Home or its receiver for any portion of the premium paid on account of said reinsurances.

The intention of the parties was expressed in the reinsurance treaty to the effect "that the fortune of all policies to which this contract relates shall affect both parties in their respective proportions alike in every respect." Moreover, it was further agreed that said reinsurances "shall be subject to all the conditions and stipulations of the original policy and to the exact proportion of the original premium which the assured itself received."

■ Adverting to the original policy issued in all cases by the Home, it is there stipulated that, if the policy should "become void or cease," the unearned portion of the premium should be returned. No other construction can be put upon these several provisions save that it was the intention of the parties that, upon cancellation, the unearned premium should be returned to the Home. When the Home was adjudicated an insolvent, its policyholders became creditors to the extent of the unearned premiums on their policies. National Union Fire Insurance Co. v. Bynum, supra; 14 R. C. L. 583. At the same time the receiver became entitled to collect the unearned premium in the hands of the North River on all reinsurances.

While we are of the opinion that the rights of the parties were entirely controlled by contract, yet any doubt that might have existed in respect to the intentions of the parties on their several obligations was dispelled by proof of both the practice of the parties and the custom of those engaged in similar undertakings. It appeared to be the uniform practice in accordance with the general custom for the reinsurer to refund to the insured the unearned premium in all cases of cancellation.

The judgment was for the right party, and will be affirmed.