DAVIS *v.* AMRA GROTTO M. O. V. P. E. R., INC., *et al.* (WARNER, INTERVENER).

(*Knoxville,* September Term, 1935.)

Opinion filed January 13, 1936.

POORE, TESTERMAN & BURNETT, of Knoxville, for appellant.

A. E. MITCHELL, W. C. BURTON, and LINDSAY, YOUNG & ATKINS, all of Knoxville, for appellee.

MR. SPECIAL JUSTICE DAVIS delivered the opinion of the Court.

This cause resolved itself into a general creditors' bill against the Union National Life Insurance Company, which was incorporated under the laws of Ohio, but had domesticated in Tennessee. The order sustaining the general creditors' bill was made June 30, 1933, and a fund of something over $8,000 in the hands of Amra Grotto, belonging to the insurance company, was impounded. On an agreed statement of facts, the chancellor made a final decree and order of distribution, after first dismissing the intervening petition of the superintendent of insurance of the state of Ohio.

Hon. Charles T. Warner, superintendent of insurance of Ohio, filed an intervening petition in the cause on December 27, 1934. In this petition, he alleges that he is the receiver of the Union National Life Insurance Company, having been appointed such receiver by the court

of common pleas of Franklin county, Ohio; that the ancillary receiver appointed in the Knox county cause has in his hands the fund which was received from Amra Grotto; and that this fund should be paid to the intervener for distribution among the general creditors of said insurance company. The prayer of the petition is that this fund be paid to the intervener, and a decree entered that he is entitled thereto and to have the same delivered to him.

Under the stipulation of facts touching the matter, it is agreed that Amra Grotto is a fraternal corporation organized under the laws of Tennessee; that it had a contract of insurance for certain of its members with the Gem City Life Insurance Company, an Ohio corporation; that the Union National Life Insurance Company was successor to the Gem City Life Insurance Company, and succeeded to all the rights and liabilities of the latter; that the Union National Life Insurance Company, incorporated in Ohio, was duly qualified to do business in Tennessee; that on May 9, 1933, the Union National Life Insurance Company was adjudged insolvent in the court of common pleas of Franklin county, Ohio, and that petitioner was appointed as receiver thereof; that the fund on hand was collected by Amra Grotto from its members, as premiums due the Union National Life Insurance Company, which company has many creditors and policyholders in other states than Tennessee; that it is being wound up in said Ohio proceeding, which is in the nature of a general creditors' proceeding; that many local claimants have filed their claims in Ohio; and that the assets of the insurance company are insufficient to pay in full the claims against it.

This petition was heard January 30, 1935, and the acting chancellor dismissed it, the order reciting that the Ohio receiver did not have and possess extra territorial jurisdiction so as to enable him, under the facts presented, to maintain his petition. Said petitioner was denied an appeal at that time.

The final decree and order of disposition in the cause was made April 18, 1935. By this order, the chancellor directed that the fund on hand should be distributed first to resident creditors who have proven their claims, and the decree sets out the claims allowed. The Ohio receiver and superintendent of insurance excepted to this order, in its holding that "he is not entitled to have the entire fund in this cause, less costs, paid over to him," and was allowed an appeal, which he perfected. Through his assignments of error here, he insists that the court erred in decreeing that the fund should be distributed to Tennessee creditors first, the balance only to be paid to him; erred in refusing to decree that he is entitled to have the fund, less proper costs, paid over to him; and erred in failing to decree that the title to the fund was in him, as statutory liquidator of the Union National Life Insurance Company.

As to the first insistence, namely, that the court could not order the fund distributed to Tennessee creditors exclusively, it is sufficient to say that no foreign creditor is here making this question, and therefore the question is not presented for determination. The whole controversy, so far as the Ohio officer is concerned, is disposed of upon a consideration of his insistence that he is entitled to have the entire fund paid over to him, for distribution through the Ohio court proceedings.

There is some discussion in the briefs of the question of the right of a foreign receiver to maintain a suit in this state. But the Ohio receiver's petition was not treated as involving that question alone; it was dismissed upon the theory that the Tennessee court had the right to retain Tennessee assets for distribution according to local laws.

The Ohio receiver insists that he is successor to the title of all the assets of the Union National Life Insurance Company, and is a charter liquidator, or statutory liquidator, under Senate Bill No. 344 of the General Assembly of the state of Ohio, an act which was approved March 8, 1933, a copy of which is in the record. This act, in section 634-4 (Gen. Code), contains a provision that if an insurance company shall be ordered into liquidation, by proper order of the court, such liquidation shall be made under the direction of the superintendent of insurance, who shall be vested by operation of law with title to all the property of such corporation. But it is extremely doubtful if the order of the court of common pleas of Franklin county, Ohio, entered in the case of Charles T. Warner, superintendent of insurance of *Ohio* v. *Union Central Life Insurance Company,* No. 138518, in the Ohio court, a copy of which order is in the record as a part of the stipulation of facts, is sufficient in its terms to vest the superintendent of insurance of Ohio with title to the property of the insurance company. This order recites that the defendant, insurance company, is insolvent, and then proceeds as follows:

"It is therefore ordered by this Court that plaintiff, Charles T. Warner, Superintendent of Insurance of Ohio, be authorized, and he is hereby directed to take pos-

session of the property, business and assets of the defendant company including all loans, bank deposits and other assets of whatsoever kind and nature and wheresoever situated, and conduct the business of such corporation, or liquidate its business and affairs under the order and direction of this Court," and then follows authority to appoint a deputy for the purpose of conducting the business or liquidating the assets. Thus it does not appear that the Ohio court exercised its authority to vest the superintendent of insurance with title to the assets of the defendant, insurance company. The order vests such superintendent with power, in his discretion, to conduct the business of the insurance company, or to liquidate its business under the direction of the court. And while the stipulation of facts states that the superintendent of insurance of Ohio is liquidating this insurance company, there is no order of the Ohio court in the record which vests such superintendent with title to the assets of the insurance company. The order presented in fact appoints such superintendent as receiver, and has no greater force or effect than to vest him with the rights of a receiver, acting under the orders of the Ohio court.

And be this as it may, and whether we regard the intervention of the superintendent of insurance of Ohio to be in his capacity as receiver, or statutory liquidator, we think he is not entitled to remove from Tennessee the assets of this insolvent, domesticated insurance company, which owes obligations to local creditors. The cause is unlike that presented in *Clark* v. *Williard*, 292 U. S., 112, 54 S. Ct., 615, 78 L. Ed., 1160, which case deals with the rights of a charter or statutory liquidator, in whom

the title to all the assets of an insolvent insurance company is vested. The Supreme Court of the United States said in that case that Montana had expressed no local policy by statute, or decision, whereby judgments and attachments in the state have a preference over the title of a charter liquidator, but when the Supreme. Court of the state acts on the question, it will speak with ultimate authority; and the court states also that domestic corporations, after dissolution, may, upon a proper showing, be placed in the hands of a receiver and its assets ratably distributed, and it recognizes the right of the Montana court to retain the assets in the local jurisdiction until all local creditors are paid their share of the assets, wherever located, and it is said that there is power in a court of equity to assure this requisite of equality. [*Mieyr* v. *Federal Surety Co.*, 94 Mont., 508, 23 P. (2d), 959.]

We think *Blake* v. *McClung,* 172 U. S., 239, 19 S. Ct., 165, 43 L. Ed., 432, which held that a statute of this state which attempted to give resident creditors of a corporation priority over nonresident. citizens, violated article 4 of the United States Constitution, in denying equal privileges and immunities to the citizens of the several states, is not applicable here, because that question is not open on the record.

It has long been the public policy of this state, declared through the decisions of this court, to retain within the state all assets of foreign corporations found within the state, and upon the insolvency of such corporations, to treat these assets as a trust fund, and to distribute them ratably among creditors. This is a sovereign right possessed by the state, consistently exercised, and one which we will protect and enforce.

In *Smith* v. *St. Louis Mut. Life Ins. Co.,* 74 Tenn. (6 Lea), 564, this court asserted the power and right of the state to seize and administer upon the assets of an insolvent foreign corporation, and in the opinion it is said, "It may well be held that any foreign corporation permitted to do business in this State may be treated, so far as the rights of creditors are concerned, as a domestic corporation, and subject to the same provisions in favor of domestic creditors.

"In the next place, it is a general principle of international law that every State has the right to control the property within its jurisdiction, and will appropriate the same to the payment of its own creditors before assenting that any part may be removed."

In *Voightman & Co.* v. *Railroad Co.,* 123 Tenn., 452, 131 S. W., 982, Ann. Cas., 1912C, 211, where it was insisted that the defendant was a foreign corporation, with obligations as such in other states, this court said that it was under no duty to inquire into that matter; that we must deal with foreign corporations as we find them here.

In *Hardee* v. *Wilson,* 129 Tenn., 511, 167 S. W., 475, Ann. Cas., 1916A, 94, while recognizing the right, if not the rule of a foreign chancery receiver to sue in this state as a matter of comity, yet throughout the opinion it is recognized that such right will be permitted when rights of local creditors are not thereby prejudiced. But it is manifest that permitting a foreign receiver to sue in our courts, as a matter of comity, is not the question here involved. On the contrary, the receiver in the Ohio court, and whether he be regarded as receiver, charter, or statutory liquidator, seeks to remove from

the courts of this state all the assets of the insurance company found in this state. To permit this would be inimical to the interest of local creditors, would be in contravention of the policy of the forum, and cannot be permitted.

We must, therefore, overrule the assignments of error on behalf of the superintendent of insurance of Ohio, and affirm the chancellor's decree in retaining the assets within the local jurisdiction.

One other question arises. The petitioner, Hattie M. Gibbs, has appealed from an order of the court fixing the amount of her claim at $123.25, and insists that it should have been for a greater sum. She is the surviving widow of William N. Gibbs, who was a member of Amra Grotto, and who held an insurance certificate issued by the Gem City Life Insurance Company, the obligations of which were assumed by the Union National Life Insurance Company. Her husband, the insured, died December 11, 1934, which was, of course, subsequent to the insolvency of the insurance company and the proceedings to liquidate its assets. Said insured paid all premiums, dues, and assessments upon his policy up to the insolvency proceedings instituted against the insurance company in the Ohio court, on May 16, 1933, and was in good standing at the time of such insolvency proceedings. These facts are agreed upon. It is also agreed that at the insured's death he had an expectancy of 7.54 years. Mrs. Gibbs sought to recover the value and benefits of said policy. The trial court was of the opinion that she was entitled to recover merely for the premiums paid, and awarded her a decree for that sum only. She has appealed, and through her assignments of error

insists that the value of the certificate of insurance, as of the date of defendant's insolvency, should have been the basis of her recovery, and insists that this value was $730.90, as against the return of premiums in the sum of only $123.25.

We are of opinion that this position is well taken. We are not dealing with the repudiation of contracts, as in *Life & Cas. Ins. Co.* v. *Baber,* 168 Tenn., 347, 79 S. W. (2d), 36. On the other hand, the question here is the right of the policyholder against an insurance company which has become insolvent.

In Couch's Cyclopedia of Insurance Law, vol. 8, p. 6689, it is stated that where a life insurance company is adjudged insolvent, the claims accruing to its policyholders are in the nature of damages for a breach of contract, which occurs at the date of dissolution, and the damages are the value of the claims as of that date. It is also said: "And the insolvency and dissolution of an insurance company *ipso facto* terminate outstanding policies, and the company is liable in damages measured by the net value of such policies, calculated as of the date of dissolution." See, also, 32 C. J., 1265; 37 C. J., 442, 443.

In 14 R. C. L., 853, it is pointed out that, in insolvency proceedings of stock insurance companies, policyholders are creditors for the value of their policies at the time of the breach thus occurring.

It would not be equitable, in cases of this type, to hold that the policyholder is limited to a recovery for the premiums paid. The insured has advanced in age, may have suffered disabilities which would preclude the procurement of another policy, and there may be other ele-

ments which would enter into the rights and liabilities of the parties. Life insurance increases in value every year, and, in our view, the correct rule to apply is the value of the policy as of the date of insolvency of the insurance company. The authorities referred to lay down the rule for calculating such value; and the result reached herein is not in conflict with the holding in *Life & Cas. Insurance Co.* v. *Baber, supra.* On the contrary, that opinion sustains the conclusion reached here. Mr. Justice McKinney points out in his opinion that conditions may exist under which the policyholder would be entitled to the value of his policy, and specifically recognizes that old age and physical disabilities may enter into the rights of the policyholder. The dominant thought and effort of courts is to give to the policyholder the value paid for and accrued to him, and in this cause, this can and should be ascertained as of the date of the insolvency of the defendant. As the value of the policy on such date does not sufficiently appear, we direct that, if such value is not agreed upon, proper orders and reference be taken upon the remand to ascertain such value.

As modified, the decree of the Chancellor is affirmed, and the cause remanded. The costs of the appeal will be paid from the fund in the hands of the chancery court.