# BATES v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.—177 S. W. (2d) 360.

Middle Section.   May 11, 1943.

Petition for Certiorari denied by Supreme Court, January 8, 1944.

Joseph L. Lackey and Jay C. Evans, both of Nashville, for plaintiff in error.

Seay, Stockell & Edwards, of Nashville, for defendant in error.

FELTS, J.   Plaintiff, assignee of the beneficiary, brought this action on a policy issued by defendant on

the life of Benson F. Bates, Jr., to recover $3,000, the face amount and the double indemnity for the accidental death of the insured. By amendment recovery of the statutory (Code, sec. 6434) penalty was also sought. The defense was that the insurance had lapsed for nonpayment of the premium.

At the close of all the evidence plaintiff moved the court to direct a verdict for him for the face amount and the double indemnity and to submit to the jury the question of his right to recover the penalty. The court overruled this motion. Defendant moved for a directed verdict. The court granted its motion, directed a verdict for it, and entered judgment dismissing the action.

Plaintiff appealed in error and insists that upon the undisputed facts the policy was in force, and the trial court should have sustained his motion and denied defendant's motion.

The material facts are not in dispute. On October 11, 1940, at Atlanta, Georgia, Benson F. Bates, Jr., applied to defendant for a policy of life insurance of $2,500. The application was in two parts, Part I stating the amount and kind of insurance, the beneficiary, the age and address of the applicant, etc.; and Part II being his answers as to his health, history, family record, etc. Part I was signed by him and by defendant's soliciting agents, James B. Ramage and Eugene E. Brooks; and Part II was signed by him and by defendant's medical examiner. This application was approved at defendant's home office in New York, the policy was issued, and was sent to defendant's Atlanta office for delivery to Bates. But when Ramage took the policy to him, Bates stated that he could not take it because he could not pay for it. Ramage returned it to defendant's Atlanta office and it was canceled.

At the same time, however, Ramage and Brooks induced Bates to apply for another policy, and he signed Part I of a new application December 14, 1940, applying for a policy of $1,500, the premiums to be paid quarterly, upon a 30-year-payment-life plan, with double indemnity for accidental death and waiver of premiums for total and permanent disability. This insurance was to be preceded by preliminary term insurance for three months. Part II of the first application was used with Part I of the second application. This to relieve Bates from another medical examination and the agents, Ramage and Brooks, from paying another medical examiner's fee, the rule being that the soliciting agent had to pay such fee where he did not collect as much as $10 on the initial premium.

On December 14, 1940, when Bates signed Part I of the second application, he paid Ramage $4.83, which Ramage calculated to be the amount of the premium for the preliminary term insurance. It was noted on the application that Bates had paid $4.83 as the premium for the three months' preliminary insurance, which was to precede the insurance upon the 30-year-payment-life plan; and Ramage gave Bates a receipt for $4.83, reciting that it had been paid as the premium for the preliminary term insurance, and that this insurance was to take effect December 14, 1940, provided the application was approved by defendant's officers at its home office.

At defendant's Atlanta office it was found that Ramage had made a mistake in calculating the preliminary term premium. It was $5.06 instead of $4.83; but Ramage and Brooks themselves paid this difference; and the application (Part I of the second and Part II of the first application) was forwarded to defendant's home office.

There it was approved and the policy was issued December 26, 1940. The policy recited that $5.06 had been paid in advance as the term premium, and provided that the preliminary term insurance commenced December 11, 1940 and should end March 11, 1941, the register date of the policy and the effective date of the insurance upon the 30-year-payment-life plan. The face amount of the policy was $1,500, with an additional $1,500 payable for accidental death of the insured, and a provision for waiver of premiums in the event of his total and permanent disability. The premiums were $11.22 each and were due the 11th of March, June, September, and December of each year for 30 years or until the prior death of the insured.

Defendant mailed the policy to its Atlanta office for release, and it reached this office December 30, 1940. It was later delivered to plaintiff for his brother, the insured. There is conflict in the evidence as to the date of the delivery. Plaintiff and his brother were employed at the Southern Buick Company in Atlanta. The evidence for defendant is that Ramage took the policy to the Southern Buick Company and, not finding the insured there at the time, he delivered it to plaintiff for the insured; and that this was about January 15, 1941, or a month before Ramage entered the army on February 15, 1941; while plaintiff says that Brooks delivered the policy to him at the Southern Buick Company "between March 10, and March 15, 1941," or about a month after the insured went into the army. For reasons hereafter stated, we do not think this issue is material.

Defendant's home office on February 17, 1941 mailed to the insured at his home address a notice that the first quarterly premium on the policy would be due March 11,

1941. This premium, however, was not paid. Defendant's Atlanta office on April 4, 1941 mailed to the insured at his last known address a notice that the insurance would lapse if the premium was not paid within the 31 days of grace, or before April 11, 1941. During the latter part of April Brooks procured the insured's army address and had the Atlanta office mail this address and a health certificate to Ramage, then a lieutenant in the army, with the request that he undertake to get the insured to sign the health certificate, pay the March 11 premium, and reinstate the insurance without a medical examination. Ramage wrote the insured, enclosing the health certificate and requesting him to execute the certificate, pay the overdue premium, and reinstate the insurance. But this was not done.

The insured was killed in an automobile accident May 18, 1941. The insured's mother was named as beneficiary in the policy. She assigned her claim under it to plaintiff.

As stated, the application, which in this case was an offer by the insured, was accepted by the insurer in New York; and the policy was delivered in Georgia; but counsel have treated the case as governed by the law evidenced by Tennessee decisions. This apparently upon the presumption that, nothing to the contrary appearing, the controlling law of the foreign jurisdiction is the same as the law of this state. It is true the uniform act, enacted in this state February 11, 1943 (Senate Bill No. 285; Cf. Dixie Ohio Exp. Co. v. Butler (Tenn. Sup.), 166 S. W. (2d) 614), requires us to take judicial notice of the common law and statutes of other jurisdictions of the United States; but, since neither party claims there is any difference between the law of the place of the

contract and the law of the forum, we think we may safely presume they are the same in this case.

The argument for plaintiff is that the evidence that the premium of March 11, 1941 was not paid and that the policy lapsed should be put aside as irrelevant; that by the terms of the policy that premium was the first premium; that the policy itself acknowledged the payment of the first premium; and that the effect of defendant's delivery of the policy was to estop it to deny such payment and to defend upon the ground that the insurance had lapsed.

An unconditional delivery of a policy without requiring the first premium to be paid ordinarily justifies the inference that the insurer extended credit to the insured for the premium; and it is generally held that, even though the policy contains a condition that it shall not take effect until the first premium has been paid, an unconditional delivery of it without exacting payment of the premium is a waiver of the condition and precludes the insurer from defending upon the ground that the insurance never took effect because the first premium was not paid. Southern Life Ins. Co. v. Booker, 56 Tenn. (9 Heisk.), 606, 24 Am. Rep. 344; Equitable Ins. Co. v. McCrea, Maury & Co., 76 Tenn. 541, 545; Annotation 118 A. L. R. 1072; Vance on Insurance (2d Ed.), 224-228; Cooley's Briefs on Insurance (2d Ed.), Vol. 1, 757-763. And the weight of authority is that an acknowledgment in the policy that the first premium has been paid will, in the absence of fraud, estop the insurer to deny such payment in order to avoid liability on the policy. Southern Life Ins. Co. v. Booker, supra; Equitable Ins. Co. v. McCrea, Maury & Co., supra; Annotation L. R. A. 1918A,

308; Vance on Insurance (2d Ed.) 229-231; Cooley's Briefs on Insurance (2d Ed.), Vol. 1, 763-767.

To support his insistence that the premium of March 11, 1941 was the first premium and that the policy acknowledged that this premium had been paid, plaintiff refers to the "Register date: March 11, 1941," on the back and also to the face of the policy:

"This insurance is granted in consideration of the payment to the Society of a first premium of Ten and 19/100 Dollars, and of the payment thereafter of a quarterly premium of a like sum upon each eleventh day of June, September, December and March until thirty full years' premiums shall have been paid, or the prior death of the insured.

"The Provisions of the subsequent pages hereof form a part of this contract as fully as if recited at length over the signatures hereto affixed. This policy is executed at the Home Office of the Society in New York, the twenty-sixth day of December, 1940, hereinafter called the Date of Issue.

"Effective the 11 day of March 1941. (See endorsement for Term Insurance)"

But other parts of the policy also refer to the premiums. The rider providing for $1,500 additional indemnity for accidental death stated that it was issued "in consideration of the payment commencing March 11, 1941, of an additional premium of $.77 with each quarterly premium payable on said policy." The rider providing for waiver of premiums in event of permanent and total disability contained a similar recital except that the additional premium for such waiver was 26 cents with each quarterly premium. Thus the quarterly premiums "commencing

March 11, 1941'' were $11.22 each instead of $10.19, as stated on the first page of the policy.

The application and the rider providing for the preliminary term insurance were also part of the policy. They show that the first premium on the policy was for three months' preliminary term insurance, under which the insurer assumed the same liability for that term (December 11, 1940, to March 11, 1941) as that expressed in the policy for the time thereafter. The application recited: ''The first P. T. annual premium of $4.83 has been paid to James B. Ramage on the policy applied for above, in accordance with the provisions of the receipt of date and number corresponding to this application, which is hereby accepted subject to the conditions thereof.'' That receipt stated that the insured had paid $4.83, ''the first P. T. annual premium on the proposed insurance. . . .'' And it also stipulated that the preliminary term insurance was to take effect as of the date of the receipt, December 14, 1940, provided the application was approved by defendant's officers at its home office. The preliminary term insurance rider contained this recital:

''This Term insurance is issued in consideration of the payment in advance of a Term premium of $5.06 of which $.68 is for the Provision for Additional Indemnity and $.24 for the Provision for Waiver of Premiums in event of Total and Permanent Disability. The periods referred to in the Incontestable and Self-Destruction provisions shall commence from the Date of Issue of this Preliminary Term Insurance. This agreement is executed at the Home Office of the Society in New York on its Date of Issue, the 26th day of December, 1940.''

■ It is only by treating the preliminary term as no part of the contract and the premium for it as no part of the premiums on the policy that one may say that the premium of March 11, 1941, was the first, and not the second, premium on the policy; and that this case comes within the rule, relied on by plaintiff, that delivery of a policy without prepayment of the first premium is an extension of credit for the premium. But it is generally held that where a policy provides term insurance until another form of insurance is to become effective, the two constitute but one continuous contract. Silliman v. International L. Insurance Co., 131 Tenn. 303, 174 S. W. 1131, L. R. A. 1915F, 707; Baugh v. Metropolitan Life Insurance Co., 173 Tenn. 352, 117 S. W. (2d) 742; Life & Casualty Ins. Co. v. Jett, 175 Tenn. 295, 133 S. W. (2d) 997; 29 Am. Jur., sec. 221, p. 226 and cases there cited. This is true in the case before us. As we have seen, the rider provides: "The periods referred to in the Incontestable and Self-Destruction provisions shall commence from the Date of Issue of this Preliminary Term Insurance." During this term the insured was covered with the same insurance as that later provided, the only difference being that the first premium did not help to create loan and surrender values as the later premiums did.

■ The reason for the rule that delivery of a policy without payment of the first premium is a waiver of a condition requiring such payment, is that the insurer must have intended to extend to the insured credit for the premium; otherwise delivery would have been withheld. But in this case there was no reason for withholding delivery of the policy. The first premium had

been paid, the insurer had accepted the insured's offer, issued the policy, and mailed it to its agent for delivery to the insured. Under these circumstances the formation of the contract had been completed and a manual tradition of the policy was not essential. Yonge v. Equitable Life Assurance Society, C. C., 30 F. 902; New York Life Ins. Co. v. Rutherford, 9 Cir., 284 F. 707; Jackson v. New York Life Ins. Co., 9 Cir., 7 F. (2d) 31; Vance on Insurance (2d Ed.), pp. 211-214; 11 Am. Jur., pp. 393, 394, secs. 108-110. It is undisputed that the policy was turned over to the agent Ramage early in January 1941 for delivery to the insured. He had a right to demand the policy, the agent was bound to deliver it to him, and could not call on him for the unmatured premium of March 11, 1941. It is for this reason that we think the conflict as to the date when the policy was handed to plaintiff is immaterial.

▮ Nor do we think that the policy acknowledged that the premium of March 11 had been paid. As we have seen, it did state that the face amount of the insurance was granted in consideration of the payment of that premium in the sum of $10.19 and the payment of the other quarterly premiums in the same amount for 30 years or until the prior death of the insured; but this was no more an acknowledgment that the first quarterly premium had been paid than it was that the others had been paid; it was but a statement that if and when paid they would constitute the consideration for the face amount of the insurance. Plaintiff also refers to the testimony of witnesses for defendant that the policy itself was a receipt for the first premium; but it is clear that they were referring to the premium for the pre-

liminary term insurance and not to the premium due March 11, 1941.

All of the assignments of error are overruled and the judgment of the circuit court is affirmed. Costs of the appeal in error are adjudged against plaintiff in error.

Howell and Hickerson, JJ., concur.