INSURANCE PREMIUM SERVICES, INC. v.
JOSEPH WOOD, Commissioner of Insurance of Indiana.
—420 S.W.(2d) 595.

Eastern Section. March 29, 1967.

Certiorari Denied by Supreme Court October 16, 1967.

516

W. Keith McCord, Knoxville, for plaintiff in error Insurance Premium Services, Inc.

Frantz, McConnell & Seymour, Knoxville, for defendant in error Joseph Wood, Commissioner, etc.

McAMIS, P. J. The Commissioner of Insurance of the State of Indiana, as Liquidator of Universal Automobile Insurance Company, an insolvent insurance corporation organized and existing under the laws of Indiana, brought this action against Mid-States Underwriters, Inc., now known as Insurance Premium Services, Inc., to recover an alleged balance for premiums on policies sold in Tennessee.

When defendant learned of the impending or threatened insolvency of the Universal Company defendant's President, Mr. Massey, without the knowledge or consent of his customers holding policies in the Company, procured substitute policies in another company. This resulted in the unearned portion of certain premiums

being left with the Company until after it was declared insolvent by the Courts of Indiana on August 6, 1962, when the Indiana Commissioner of Insurance was authorized to proceed with its rehabilitation. Later, on October 3, 1962, rehabilitation apparently having proved abortive, the Court ordered the liquidation of the Company. Circular letters notified agents, including defendant, of these orders.

By its special pleas defendant claimed the right to off-set against any claim of the Commissioner, as Liquidator, the unearned portion of the premiums due its customers and further insisted the insolvency of the Company effected a cancellation of the policies outstanding in Tennessee, with the result that even if no effective cancellation without short rate had been made of all policies prior to insolvency the Commissioner was not entitled to collect from defendant on a short rate basis applicable only where the policyholder himself cancels the policy before its maturity date.

The trial judge declined to charge the jury as requested by defendant that insolvency of the Company worked a cancellation of policies as a matter of law and also declined to submit to the jury any question of off-set, holding that despite the fact that defendant at its own expense replaced its customers' policies in another company, the Liquidator remained liable to claims of policyholders for unearned premiums and that defendant was a volunteer without right of off-set.

The jury returned a verdict for $5905.49 in favor of the Commissioner for which judgment was rendered. Upon its motion for a new trial being overruled defendant appealed.

Because of its bearing on the question of the cancellation of the policies and the resulting effect upon the right of the Commissioner, as plaintiff, to cast the account on the basis of short rate premium charges, it seems logical to consider at the outset whether the insolvency of the insurer in this case had the effect of cancelling the policies. To bring this question into proper focus, some further development of the facts is required.

Universal Automobile Insurance Company was never domesticated or authorized to do business in Tennessee. The only agent in the State selling its policies was the defendant. It had no policyholders in Tennessee except a small number who obtained policies through defendant. It wrote no insurance in Tennessee except insurance of a hazardous nature which, as provided by T.C.A. 56-707, defendant had not been able to place with "authorized insurers". As contemplated by that Act, as we understand, it had no assets in Tennessee subject to the claims of its policyholders through liquidation proceedings by the Tennessee Commissioner of Insurance or otherwise. Apparently, it was hopelessly insolvent and probably will pay about 10¢ on the dollar to its creditors. It is stipulated Indiana and Tennessee do not practice reciprocity in liquidating insolvent insurance companies affecting citizens of the two States.

The Supreme Court of Tennessee, in State ex rel. Williams v. Cosmopolitan Ins. Co., 217 Tenn. 8, 394 S.W.2d 643, in an able opinion by Mr. Justice White, dealt with the question of the effect of an insurer's insolvency upon the continued legal efficacy of its policies. We quote from that opinion:

"The law is clear that where a company ceases to do business because of insolvency, a declaration of that

condition is at least one of the touchstones for determining a policy termination date; and the appointment of a receiver is often mentioned in connection therewith. Gleason v. Prudential Fire Ins. Co. 127 Tenn. 8, 151 S.W. 1030 (1912); National Union Fire Ins. Co. v. Bynum, 183 Ark. 1100, 40 S.W.2d 446 (1931); Casteel v. Kentucky Home Life Ins. Co., 258 Ky. 304, 79 S.W.2d 941 (1935).

"It is quite clear that on a company's insolvency or dissolution, that policyholders are liable to a receiver for earned, but not for unearned, premiums. When an insurance company is adjudicated insolvent and receivers appointed, its right to continue business ceases and all of its outstanding liability is canceled by operation of law, except claims of its policyholders for unearned premiums and cash surrender values of policies. Appleman, Insurance sec. 11070 (1946).

"While there is authority to the contrary, the generally recognized rule is that a decree of dissolution or an adjudication of insolvency, coupled with the appointment of a receiver, cancels or terminates outstanding policies by operation of law, and subsequent losses under such policies are not liabilities which may be enforced against the receiver or liquidator. 44 C.J.S. Insurance sec. 129b (1945).

"As can be seen, a decree of dissolution or liquidation can also be considered a cancellation point, and, in fact, a decree of insolvency alone may so serve under some authority."

After. citing Davis v. Arma Grotto, etc., 169 Tenn. 564, 89 S.W.2d 754, 106 A.L.R. 1506, holding that upon "dissolution and insolvency" the insured was entitled to

recover the value of his policy "as of the date of insolvency", the opinion continues:

"We recognize that in cases involving the insolvency of insurance companies, all parties will doubtless benefit by having outstanding policies canceled at the earliest possible time. For the insolvent insurer, the avoidance of loss claims building up—while insolvency is a present but undeclared fact—is perhaps of paramount consideration. As for the insured, the longer he must hold his policy during actual insolvency, the greater the risk of having his claim unsatisfied, of having to compete in state reserve funds with a growing brotherhood of claimants, and of sustaining the added cost of obtaining reinsurance from another company. He can also look forward to the possibility of costly litigation to regain unearned premiums already paid to the insolvent. For the insurance agent or broker, he is under the business obligation of obtaining for his customers substitute insurance with a solvent company, often at his own expense, while at the same time he must still collect and remit premiums on the old policies until insolvency has been decreed."

The Court in that case was dealing with a company which was not only insolvent but had been ordered by the courts to cease doing business. In this case the Indiana proceeding had resulted in an adjudication of insolvency with an accompanying order to attempt rehabilitation. We are not informed as to the purpose and effect of the rehabilitation order in Indiana. We can assume, we think, from the use of the term that it contemplates an attempt to continue doing business through the Insurance Commissioner as Liquidator in the hope of salvaging the company.

In this case, while rehabilitation was contemplated and attempted, in addition to insolvency there are other cogent and compelling reasons for holding policies held by residents of Tennessee at an end upon a judicial declaration of insolvency alone. ·

As we have seen, the business of Universal was of an extrahazardous nature. It took risks which no authorized company would take. It had no assets in Tennessee to which Tennessee policyholders could look for payment in event of a loss under the policy. If the policies continued in effect beyond declared insolvency and a loss subsequently occurred the policyholder's only remedy, so far as we are advised, would be to take his claim to a foreign state and there file it and compete, as said in State ex rel. Williams v. Cosmopolitan Ins. Co., supra, "with a growing brotherhood of claimants".

When a company which engages in an extrahazardous type of business has no assets within the state, has been judicially declared insolvent and has passed into the hands of a Liquidator who may not be subject to process in Tennessee we think our courts should hold its contracts no longer in effect as to residents of this state. The business of insurance, as often held, is affected with a public interest and we are persuaded by the reasoning of State ex rel. Williams v. Cosmopolitan Ins. Co., supra, and the authorities there cited and discussed that under the circumstances of this case insolvency resulted in a termination of the policies in Tennessee as a matter of law and public policy.

We do not hold, as we are urged to do, that insolvency under the circumstances amounted to a breach of contract entitling defendant to claim an off-set for damages for the termination of its agency contract.

.If, as we hold, the policies not previously cancelled were cancelled by operation of law on August 6, 1962, it follows that on such policies the Liquidator is not entitled to charge on a short rate basis, since it is only where the policyholder cancels that the short rate applies.

We must next consider the effect of defendant's attempts to cancel some of the policies before August 6, 1962. Mr. Messer testified some of the policies were in the hands of defendant's sub-agents and had never been delivered to the policyholder on that date and that such policies, according to the custom in the insurance business, are cancellable on the flat rate basis, i. e., no premium is due to be paid to the insurer. Notwithstanding non-delivery, these policies may have become valid and binding obligations of the Company.

It is frequently held that a policy endorsed as beginning at a certain time and left in the possession of an insurance broker or agent for delivery may be valid and binding on the insurer even though never manually delivered. Bates v. Equitable Life Assurance Society, 27 Tenn. App. 17, 177 S.W.2d 360. Other cases to the same effect could be cited.

Except in cases where the named insured knowingly surrendered the policy or contract of insurance to defendant for cancellation, however commendable its intentions, defendant was without authority to effect a cancellation by sending the policy to the Company or otherwise. The policy contract was between the insured and the Company —not between defendant and the Company. All such policies may well have remained in force and effect until August 6, 1962, when all of the policies terminated by operation of law.

The Circuit Judge declined to submit to the jury the alleged flat rate custom where the policy has not been delivered, apparently on the ground the practice was a business curtesy which would not be binding on the Liquidator. We can not say this was error.

It appears from the testimony of Commissioner Johnson of Indiana that when a policy was received from defendant it was "just assumed" defendant was acting for the insured. This assumption may well have been incorrect.

The Court in our opinion incorrectly charged the jury, in effect, that the policies could be cancelled only in one of the ways provided in the policies and erred in declining to charge as requested by defendant that insolvency may result in cancellation and when so cancelled the short rate provision of the policy has no force and effect. Under the charge, as given, the jury had no choice but to charge defendant on the basis of short rate.

The judgment is reversed and the cause remanded for a new trial.

Since we can not know what the proof will show on the remand we refrain from further comment except to say that we agree with the Circuit Judge that defendant is not entitled to an off-set for the unearned premiums due its customers and is not entitled to raise the question of the priority of Tennessee creditors as a defense in this case. We venture to suggest that this may reduce the questions on the remand to a simple accounting on the basis of premiums unaccounted for by defendant at the regular rate.

Remanded for a new trial not inconsistent with this opinion. Costs of appeal are adjudged to defendant in error.

Cooper and Parrott, JJ., concur.

## ON PETITION TO REHEAR

McAMIS, P. J. Defendant in error, Joseph Wood, Commissioner, has petitioned the Court for a rehearing and for reconsideration of our holding that the case be remanded for a new trial. The burden of the petition is that this Court should now render judgment for the amount of the verdict less $544.94. It is said this request is in order in view of the complexity of the questions involved.

To grant the request would probably have the effect of depriving the plaintiff in error of a trial by jury under the principles we attempted to settle in our original disposition of the case and we should not do so for that reason.

In addition it would involve an accounting in this Court contrary to the rule that where the appellate court concludes there must be an accounting it will remand the case and will lay down the general principles to control but it will not undertake to give specific directions with reference to the accounting or attempt to make the accounting without a remand. Kenner v. City National Bank, 164 Tenn. 288, 47 S.W.2d 756.

The theory of the Commissioner, both in the Circuit Court and in this Court, has been that he is entitled to collect from defendant because the policy holders can file a claim for the unearned portion of the premiums. We do not think the right to file such claims necessarily fol-

lows from our holding that the policies were cancelled by operation of law, especially where the policy holder had never actually paid defendant the amount of the premium. We note in this connection the charge of the declaration that the Commissioner is entitled to recover what "the defendant, in its fiduciary capacity *has received* on behalf of Universal". (Italics ours)

■ Generally, the policy holder's right to the return of unearned portions of the premium is contractual, i.e., based upon the provisions of the policy. Under our holding the policies were cancelled by operation of law on August 6, 1962. While the record is not such that we should determine the question at this time, it may be the policy holder's action would be for breach of an executory contract. If so, it would be necessary to show damages resulting from the breach and defendant contends no policy holder sustained any loss since defendant secured policies in other companies without additional cost to them. There may be some question also whether the Company (now the Commissioner as Liquidator) can recover without having executed the contract by furnishing protection beyond August 6, 1962. The fact that the Company set up charges against defendant on its books for the full premium, less commissions, does not make the contract any less executory and unexecuted. And, while the policies ran in the name of its customers defendant had an interest in their full execution since it furnished the funds for procuring the policies for its customers who in some respects may be considered third party beneficiaries. A duty to defendant to furnish this protection during the premium period may be implied in the purchase by defendant of the policies in question. It is well settled an insurance agent or broker may act for and in

behalf of both the insurer and the insured. Also well settled is the rule that the promisee under a third party beneficiary contract may maintain an action on the contract. 17 Am.Jur.2d 713, 714, Contracts, Section 297.

Under the circumstances the Court considers the verdict most inequitable and unjust, little less than an attempt by the Company (now the Commissioner as Liquidator) to collect something for nothing. We are not disposed to cut off a complete development of the case in the light of our previous holding by taking a leap in the dark by rendering a judgment for a specific amount. We think a new trial, if necessary with some amendments to the pleadings, is the only fair way to have the rights of the parties determined.

The petition is, accordingly, denied.

Cooper and Parrott, JJ., concur.